IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN ECHEVARRIA, LUIS MORELL,
& MANUEL MARTINEZ UMPIERRE

    Plaintiffs

    v.

RICHARD L. BECK, MD, &
HEALTH CARE AUDITORS, INC.

    Defendants

**CIVIL NO. 03-2096 (JAG)**

**REPORT AND RECOMMENDATION**

    The matter is before the Court on co-defendants Health Care Auditors, Inc. (hereinafter "HCAI") and Dr. Richard L. Beck's Motion for Summary Judgment. For the reasons set forth below, it is hereby **RECOMMENDED** that the defendants' motion be **GRANTED**.

    **I.**    **Factual Background:**

The Court has reviewed the pleadings, as well as the affidavits of HCAI President Nicholas J. Carolides, Dr. Richard L. Beck, and plaintiff Manuel Martínez Umpierre. The Court has also reviewed selected portions of the deposition of plaintiff Martínez Umpierre submitted by the defendants, as well as various pertinent letters and correspondence between the parties, submitted by the plaintiffs. Although it was not submitted by either party, during a hearing held December 19, 2005 the Court also reviewed, without objection, the entire transcript of the deposition of Dr. Richard L. Beck. Based on these submissions, the Court finds that the following facts are not genuinely at issue:

    Defendant HCAI is a corporation with offices located at 1656 Arabian Lane, Palm Harbor, Florida, which is engaged in the business of providing expert medical consulting services. On September 20, 2000, plaintiff Manuel Martínez Umpierre, an attorney admitted to practice before the Supreme Court of Puerto Rico, contacted HCAI to assist him in obtaining an expert evaluation of the medical records of his client, plaintiff Carmen Echevarría. Mrs. Echevarría, a 36 year old Puerto Rican woman, had undergone plastic surgery on August 24, 1999 and October 19, 1999.

**CIVIL NO. 03-2096 (JAG)**                                         2

Through her attorneys, plaintiffs Martínez Umpierre and his colleague, Luis Morell Morell, Mrs. Echevarría filed suit for medical malpractice against her plastic surgeon in the Court of First Instance, Mayaguez Part, under the caption Carmen Echevarria Ríos v. Dr. Jorge Latoni Maldonado, Civil No. IDP 2000-0344.  To support her claim of malpractice, Mrs. Echevarría and her counsel sought, through HCAI, the expert evaluation of a plastic surgeon.  For this reason, on September 20, 2000, plaintiff Martínez Umpierre wrote to HCAI, enclosing a check in the amount of $455.00 for "stat preview" of the medical records and assistance in identifying an expert.  Affidavit of Nicholas J. Carolides at paragraph 3.

   As alleged in paragraph 10 of the Complaint, in his letter of September 20, 2000, plaintiff Martínez Umpierre stated specifically that "if the case goes to trial, I will need a plastic surgeon willing to come to Puerto Rico."  Exhibit 1 to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment; Affidavit of Manuel Martínez Umpierre at paragraph 2.  The plaintiffs do not dispute, however, that in response to this particular request, HCAI made clear to Mr. Martínez Umpierre and his client that HCAI could not be responsible for such arrangements, which would have to be made directly with any expert witness and would depend entirely upon him or her.  See, Defendants' Uncontested Material Fact No. 4 and Plaintiffs' "Answer" thereto admitting No. 4; Affidavit of Nicholas J. Carolides at par. 4.

   On November 6, 2000, HCAI advised Mr. Martínez Umpierre that HCAI had previewed his case, that if they wanted to go any further an expert would be required, and that HCAI would provide a board certified plastic surgeon's expert report in exchange for a fee of $2,500.00.  See, Defendants' Uncontested Material Fact No. 5 and Plaintiffs' "Answer" thereto admitting No. 5; Deposition of Manuel Martínez Umpierre at p. 29, lines 3-12; Affidavit of Nicholas J. Carolides at par. 5.  The $2,500.00 fee proposed by HCAI was solely to cover the board certified expert's report, and did not include any deposition testimony or trial testimony.   See, Defendants' Undisputed Material Fact No. 6 and Plaintiffs' "Answer" thereto admitting No. 6; Deposition of Manuel Martínez Umpierre at p. 29, lines 16-24; Affidavit of Nicholas J. Carolides at par. 6; Affidavit of Manuel Martínez Umpierre at paragraph 14.

**CIVIL NO. 03-2096 (JAG)**                                    3

As alleged in paragraph 11 of the Complaint, on January 23, 2001, plaintiff Martínez Umpierre accepted HCAI's proposal and sent HCAI a check for $2,500.00 to retain its services. HCAI's obligation under this agreement was limited to providing the plaintiffs with a board certified plastic surgeon's report. There were no other terms to the agreement. Deposition of Manuel Martínez Umpierre at p. 30, lines 1-8; Affidavit of Nicholas J. Carolides at par. 6.

On February 12, 2001, HCAI confirmed that Mrs. Echevarría's medical records had been forwarded for review to co-defendant Dr. Richard L. Beck, a "reputable" plastic surgeon, and that an expert report would be prepared no later than March 23, 2001. Exhibit 3 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.   HCAI specifically advised the plaintiffs that it "made no guarantees for events outside of its control and accept[ed] no liability … for any event or aspect of service which [the] client may find adverse to its expectations." Id.; see also, Defendants' Undisputed Material Fact No. 11 and Plaintiffs' "Answer" thereto admitting No. 11; Affidavit of Nicholas J. Carolides at paragraph 7.  HCAI further advised the plaintiffs that it was their responsibility to make any future arrangements directly with Dr. Beck, bearing in mind that "providing expert testimony is a complex endeavor and numerous factors may affect experts' future service to you, including … professional conflicts … future professional obligations or even the expert's future desire to provide any litigation support for your firm." Id.; see also, Defendants' Uncontested Material Fact No. 14 and Plaintiffs' "Answer" thereto admitting No. 14; Affidavit of Nicholas J. Carolides at paragraph 8.

As alleged in paragraph 12 of the Complaint, Dr. Beck issued his written report on March 21, 2001, which was forwarded by HCAI to plaintiff Manuel Martínez Umpierre on May 11, 2001. This report was clearly "sold to the client by [HCAI], not by the expert witness." Exhibit 3 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.  In consideration for his review of Carmen Echevarria's medical records and the preparation of his report, Dr. Beck was paid a fee by HCAI. Affidavit of Dr. Richard L. Beck at par. 5.

**CIVIL NO. 03-2096 (JAG)**                     4

Subsequently, in September of 2001, plaintiff Manuel Martínez Umpierre contacted Dr. Beck's office to arrange for him to give a deposition. Affidavit of Manuel Martínez Umpierre at paragraph 5. On September 19, 2001, Martínez Umpierre's associate, María de los A. Rullán Bidot, wrote to Dr. Beck requesting information as to his fees for deposition. Exhibit 5 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. According to Dr. Beck, he advised Mr. Martínez Umpierre's staff that his fees had to be paid in advance, and depended on whether the deposition was taken in Puerto Rico or at his office in Altamonte Springs, Florida. Affidavit of Dr. Richard L. Beck at par. 6.

On April 2, 2002, Mr. Martínez Umpierre wrote a letter to Dr. Beck enclosing a Court Order that stated that his deposition had to be taken in Puerto Rico on April 20th or 27th, 2002, and that Dr. Beck would be paid for travel and lodging expenses, as well as the sum of $800.00 for the first three (3) hours of deposition. Exhibit 6 to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. Mr. Martínez acknowledged in this letter that the proposed dates were subject to Dr. Beck's "availability", and suggested that if Dr. Beck's deposition fees were greater than what the Court had ordered he "would be glad to pay for" any difference. Id. Dr. Beck was subsequently sent airline tickets to travel to Puerto Rico to be deposed, but he returned them and canceled the deposition "due to difficulties in reaching Mr. [Martínez] Umpierre and [his] inability to confirm the deposition date." Exhibit 8 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

On July 16, 2002, Mr. Martínez Umpierre advised Dr. Beck that "the Court ha[d] rescheduled [his] deposition for September 21 or 28, 2002", and asked him to confirm his availability. Exhibit 9 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. In response, Dr. Beck's Office Manager advised Mr. Martínez Umpierre that Dr. Beck would not be able to attend a deposition in Puerto Rico, but "would be happy to consider your taking his deposition in Orlando at your convenience." Exhibit 10 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. On August 23, 2002, Mr. Martínez Umpierre wrote to Dr. Beck,

**CIVIL NO. 03-2096 (JAG)**                               5

stating that his "petition to take [the] deposition in Orlando was presented to the Court and was denied" and that "a new order was issued for [his] deposition to be taken in Puerto Rico on October 5, 2002." Exhibit 11 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. Dr. Beck's Office Manager responded that Dr. Beck "was not available to provide any deposition outside of the United States." Exhibit 12 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. There was no further correspondence on the subject, and the deposition was never held. Affidavit of Manuel Martínez Umpierre at paragraph 5; Affidavit of Dr. Richard L. Beck at paragraph 8.

On February 5, 2003, Dr. Beck received a fax transmission from Mr. Martínez Umpierre requesting that he be available to testify at the trial of the case scheduled for April 28, 2003. Exhibit 13 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment; Affidavit of Dr. Richard L. Beck at paragraph 9. On February 10, 2003, Dr. Beck's Office Manager advised Mr. Martínez Umpierre that Dr. Beck would not be available to testify at the trial, and that he would need to contact another surgeon to testify. Exhibit 14 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment; Affidavit of Manuel Martínez Umpierre at paragraph 7; Affidavit of Dr. Richard L. Beck at paragraph 11. On February 20, 2003, Mr. Martínez Umpierre wrote to Dr. Beck "pleading with him to reconsider", and stating that he would pay all travel expenses and fees for his appearance. Affidavit of Manuel Martínez Umpierre at paragraph 8. Dr. Beck did not reconsider, however, and according to the plaintiffs' Complaint, this situation "on the eve of trial, forced the Plaintiffs to desist from their case and request the voluntary dismissal thereof, thereby suffering irreparable harm." Complaint at par. 17.

There is no correspondence between Dr. Beck and Mr. Martínez Umpierre that would suggest that they verbally discussed anything with respect to Dr. Beck's traveling to Puerto Rico to testify at trial. Nor is there any statement in the affidavits or depositions that would allow the Court to infer the occurrence of any such discussion. Indeed, according to the plaintiffs, Dr. Beck and Mr. Martínez Umpierre never spoke personally, and all communication between them took place through staff. Affidavit of Manuel Martínez Umpierre at paragraph 13.

**CIVIL NO. 03-2096 (JAG)**                                6

**II.    The Standard for Summary Judgment:**

Summary Judgment is appropriate only when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact, and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Gaskell v. Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. 1993).  In ruling on a motion for summary judgment, the Court must view "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).

A factual issue is "genuine" if "it may reasonably be resolved in favor of either party" and, therefore, requires the finder of fact to make "a choice between the parties' differing versions of the truth at trial." Garside, 895 F.2d at 48 (citations and internal quotation marks omitted).  Material facts are those that "possess the capacity to sway the outcome of the litigation under the applicable law." Cadle Co.v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997); see also, Mulero Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996).  Thus, the burden is first on the movant to show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Once a movant has made a preliminary showing, the nonmovant bears the burden to show the existence of a genuine material issue for trial. J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir.), cert. denied, 117 S.Ct. 81 (1996).  A party seeking to establish a genuine issue of material fact must offer more than "effusive rhetoric and optimistic surmise." Id.  Rather, the party must demonstrate, through submissions of evidentiary quality, that a trialworthy issue persists. Id.  Factual specificity is required; a conglomeration of "conclusory allegations, improbable inferences, and unsupported speculation" is insufficient to discharge the nonmovant's burden. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**CIVIL NO. 03-2096 (JAG)**                               7

**III.   Analysis:**

Under Article 1213 of the Puerto Rico Civil Code, there are three material elements to a valid, binding contract: "(1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause of the obligation which may be established." 31 L.P.R.A. Sec. 3391.  Contracts shall be binding, but only if the "essential conditions for their validity exist." 31 L.P.R.A. Sec. 3451.  If a contract lacks any of these necessary elements, it is null from its inception. Rodríguez v. Sucesión Pirazzi, 89 D.P.R. 506, 547 (1963).  A contract which lacks the consent of the parties produces no legal effect whatsoever. Satellite Broadcasting Cable, Inc. v. Telefónica de España, 786 F.Supp. 1089, 1096 (D.P.R. 1992).

The plaintiffs' Complaint is premised exclusively upon an alleged breach of contract under Puerto Rico law.  It alleges that the statement made by Mr. Martínez Umpierre in his September 20, 2000 letter to HCAI, to the effect that if the case went to trial he would need an expert willing to come to Puerto Rico, was "an essential requirement for the hiring of HCAI and Dr. Beck…" Complaint at par. 18.  It further alleges that Dr. Beck's unwillingness to appear as a witness at the trial constituted a breach of contract, entitling the plaintiffs to damages.

Defendants HCAI and Dr. Beck argue in their Motion for Summary Judgment that even viewing the alleged facts in the light most favorable to the plaintiffs and indulging all reasonable inferences in their favor, the defendants cannot, as a matter of law, be held liable for breach of contract.  According to HCAI, the sole agreement between it and the plaintiffs stipulated that, in exchange for a fee of $2,500.00, HCAI would provide them with a board certified expert plastic surgeon's report.  HCAI claims it consented to, and fulfilled, this obligation, but assumed no obligation to ensure that the expert would come to Puerto Rico for trial.  Dr. Beck, in turn, argues that he agreed only to review the relevant medical records and render a timely written report, which he did.  According to Dr. Beck, although there were various subsequent attempts to agree as to his fees and availability for deposition and/or trial, there was never any "meeting of the minds" and hence no additional contractual obligations assumed by him.

**CIVIL NO. 03-2096 (JAG)**                                            8

In their Opposition to Defendants' Motion for Summary Judgment, the plaintiffs cite Article 1210 of the Civil Code of Puerto Rico, 31 LPRA Sec. 3375, which provides that contracts are "perfected by the mere consent of the parties and are thereafter binding not only with regard to the fulfillment of what has been expressly stipulated, but also with regards to all other consequences which, according to their nature, are in conformity with good faith, use and the law." Relying on Article 1210, the plaintiffs argue that the defendants must be held liable because "coming to Puerto Rico to appear at trial was not only specifically stated as a condition to the contract", but "also a legal consequence which, according to the nature of the engagement, is in conformity with good faith, use and the law." See, Plaintiffs' Opposition to Motion for Summary Judgment, at p. 3, par. 17. In other words, the plaintiffs suggest that "the nature of the engagement, i.e., to serve as an expert witness in a legal case, according to its nature, requires that the expert appear to testify at deposition and at trial." Id. at par. 18.

For clarity of the record, the Court shall discuss *seriatim* the respective positions of HCAI and Dr. Beck.

**A.   HCAI:**

Plaintiff Manuel Martínez Umpierre admits in his affidavit that "the $2,500 fee paid to HCAI only covered the initial report…" Affidavit of Manuel Martínez Umpierre at par. 14. Further, he admitted in his deposition that HCAI's obligation was limited to providing the plaintiffs with a board certified plastic surgeon's report, and that there were no other terms to the agreement. See, Deposition of Manuel Martínez Umpierre at p. 30, lines 1-8. It is hence undisputed that the $2,500.00 fee paid to HCAI was solely to cover the board certified expert's report, and did not include any deposition testimony or trial testimony. See, Defendants' Undisputed Material Fact No. 6 and Plaintiffs' "Answer" thereto admitting No. 6; Deposition of Manuel Martínez Umpierre at p. 29, lines 16-24; Affidavit of Nicholas J. Carolides at par. 6. Moreover, HCAI expressly advised Mr. Martínez Umpierre and his client that HCAI could not be responsible for any future arrangements for deposition or trial testimony, which would have to be made directly with any expert witness and

**CIVIL NO. 03-2096 (JAG)**                                           9

would depend entirely upon him or her.  See, Defendants' Uncontested Material Fact No. 4 and Plaintiffs' "Answer" thereto admitting No. 4; Affidavit of Nicholas J. Carolides at par. 4.

The plaintiffs' own admissions thus demonstrate unequivocally that the object of the contract between the plaintiffs and HCAI was for a limited and very specific purpose:  to provide the plaintiffs with a board certified plastic surgeon's report on the issues raised in their malpractice action.  HCAI consented to, and fulfilled, this obligation.  The cause or consideration was the $2,500.00 fee.  HCAI assumed no obligation, however, to ensure that the expert would come to Puerto Rico for trial.  Thus, whatever may have been Mr. Martínez Umpierre's unilateral expectations, as expressed in his September 20th letter, by his own admission HCAI did not consent or agree to provide an expert willing to travel to Puerto Rico for trial.  HCAI's consent to any such condition was essential to give rise to a contractual obligation on its part.

Article 1210 of the Civil Code of Puerto Rico does not alter this analysis.  The section relied upon by the plaintiffs proclaims that contracts "are perfected by the mere consent of the parties and are thereafter binding not only with regard to the fulfillment of what has been expressly stipulated, but also with regards to all other consequences which, according to their nature, are in conformity with good faith, use and the law."   The Court does not think that this language was meant to alter the agreed-upon object of a contract or otherwise require the imposition of obligations upon the contracting parties that they did not freely agree to assume.  Rather, the Court views Article 1210 merely as a statutory definition of the broad extent of contractual obligations, which must be read in the context of the traditional elements of a contract embodied in Article 1213 of the Civil Code, i.e. object, cause and consent.

As detailed above, the plaintiffs in this case admit that expert deposition and trial testimony were never a part of their agreement with HCAI.  Since HCAI did not, in contracting with the plaintiffs, consent to ensure that the expert would travel to Puerto Rico for trial, and expressly disclaimed liability for such future arrangements, it cannot be thereafter bound to fulfill this "obligation."  Plaintiff has cited no case or other authority to suggest that under Article 1210 a party

**CIVIL NO. 03-2096 (JAG)**                    10

is bound to fulfill a condition that he did not agree to and, indeed, expressly disclaimed. As such, the Court finds that Article 1210 of the Civil Code does not provide support for the plaintiffs' Opposition to HCAI's Motion for Summary Judgment. Accordingly, it is hereby **RECOMMENDED** that defendant HCAI's Motion for Summary Judgment be **GRANTED**.

**B.     Dr. Richard L. Beck:**

As to co-defendant Dr. Richard L. Beck, after careful review of the facts gleaned from the parties' respective submissions, the Court concludes that the plaintiffs have not met their burden of showing the existence of a genuine issue with respect to Dr. Beck's contention that he never agreed to travel to Puerto Rico and testify at trial.

As a condition of his engagement by HCAI, Dr. Beck agreed to review Mrs. Echevarría's medical records and render a written opinion regarding her treatment. Dr. Beck fulfilled these obligations, and in exchange was paid a fee by HCAI. Subsequently, the plaintiffs were required to engage Dr. Beck for the purpose of securing his deposition and/or trial testimony. Although there were various attempts to agree as to Dr. Beck's fees and availability for deposition, there was never any agreement and the deposition was never held. Although Mr. Martínez Umpierre subsequently attempted to engage Dr. Beck to testify at trial, and offered to pay his expenses and fees, Dr. Beck was simply not willing to accept the engagement. The plaintiffs have submitted no evidence from which it might reasonably be inferred that Dr. Beck agreed at any time to come to Puerto Rico and testify at trial.

Hence, the evidence before the Court demonstrates that there was never any "meeting of the minds" between Dr. Beck and Mr. Martínez Umpierre. The various letters submitted as exhibits by the plaintiffs merely show a series of offers made and rejected with respect to the taking of the doctor's deposition. Clearly, Dr. Beck accepted no engagement during the course of these negotiations, and the unsuccessful attempts to schedule a deposition were eventually aborted. When finally requested to testify at trial, Dr. Beck similarly declined the plaintiffs' offer, and could not be persuaded to reconsider. Nothing in the depositions, affidavits and other submissions reviewed by the Court suggests that he agreed at any time to come to Puerto Rico to testify.

**CIVIL NO. 03-2096 (JAG)** 11

Thus, with respect to Dr. Beck's alleged contractual liability in this case, there is no evidence from which a jury might reasonably infer the existence of a valid contract, because there was neither "the consent of the contracting parties" nor "the cause of the obligation which may be established." 31 L.P.R.A. Sec. 3391. Were there some evidence, however tenuous, that Dr. Beck agreed, either verbally or in writing, to come to Puerto Rico to testify, and to be paid later for his services, there would be an issue for the jury to decide. By the same token, had Dr. Beck been paid his fees in advance, there would clearly be a triable issue. But under the circumstances set forth above, there is simply no evidence of an agreement between him and the plaintiffs. As such, on February 5, 2003, when he was notified of the trial date, Dr. Beck was under no obligation to come to Puerto Rico to testify, and therefore cannot be held liable for the alleged breach of contract in this case.

Again, Article 1210 of the Civil Code of Puerto Rico does not alter this analysis. The undisputed evidence shows that Dr. Beck contracted with and was paid by HCAI, not the plaintiffs, to prepare his expert report. Clearly, Dr. Beck's preparation of such report at HCAI's behest did not constitute a contract to give deposition or trial testimony. The plaintiffs admit that they were specifically advised by HCAI that they had to engage Dr. Beck separately for that purpose. Since they never reached an agreement with Dr. Beck, however, there was no underlying engagement as an expert that might result in additional contractual obligations under Article 1210. Thus, even if it were assumed that "the nature of the engagement, i.e., to serve as an expert witness in a legal case" required that the expert appear to testify at trial, no such obligation could be legally imposed upon Dr. Beck because he was never actually engaged by the plaintiffs.

Accordingly, for the reasons set forth above, it is hereby **RECOMMENDED** that co-defendant Dr. Richard L. Beck's Motion for Summary Judgment be **GRANTED**.

**IV.    Conclusion:**

In sum, the uncontested material facts clearly show that HCAI never obligated itself to provide the plaintiffs with an expert witness willing to travel to Puerto Rico to testify at trial. Moreover, Dr. Beck never reached any actual agreement with the plaintiffs regarding his availability

**CIVIL NO. 03-2096 (JAG)**                                12

to give deposition or trial testimony. Because the uncontested facts show that the defendants never assumed the contractual obligation upon which the plaintiffs base their breach of contract claim, the defendants are entitled to summary judgment as a matter of law.

Under the provisions of 28 U.S.C. § 636 and Local Rule 72(d), District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico, this 28th day of December, 2005.

*S/ Gustavo A. Gelpi*

**GUSTAVO A. GELPI**
United States Magistrate-Judge

**CIVIL NO. 03-2096 (JAG)**                    13